**Richard Y. GARCIA, Appellant,**

v.

**TEXAS INSTRUMENTS, INC., Appellee.**

**No. 1302.**

Court of Civil Appeals of Texas, Tyler.

March 27, 1980.

Thomas Black, San Antonio, Leon Crum, Dallas, for appellant.

David R. Noteware, Thompson & Knight, Dallas, for appellee.

McKAY, Justice.

This is an appeal from a motion for summary judgment granted in favor of appellee Texas Instruments, Inc.

During the period of August 16, 1974, to January 31, 1975, appellee sold and delivered various quantities of highly concentrated sulfuric acid to Mosteck Corporation, the employer of the appellant, Richard Y. Garcia. On February 18, 1975, the appellant was moving cartons of the acid from one location to another. The cartons were constructed of fiberboard and contained four one gallon glass containers. While in the process of transporting one of the cartons, appellant tripped and fell and was severely burned when the containers broke and exposed his body to the acid.

On October 18, 1978, appellant brought suit against appellee for damages for personal injuries alleging that there arose in connection with the sale of acid from appellee to Mosteck Corporation an implied warranty that the acid was of merchantable quality and should have been adequately contained, packaged, labeled, and safe for the use for which it was intended; that appellant was a third party beneficiary of the implied warranty; that appellee breached the implied warranty; that Mosteck Corporation and appellant relied upon the warranty; and that as a proximate result of the breach appellant suffered injuries. Appellee filed a general denial and a motion for summary judgment which alleged that

appellant's cause of action is barred by Article 5526, the general two year statute of limitations for personal injuries,[1] and that no implied warranty ran to appellant because he was not a party to the sales contract. The trial court granted the motion from which appellant has appealed, bringing two points of error.

We affirm.

Appellant's basic position is that, since he properly alleged a breach of implied warranty of merchantability under Section 2.314 of the Texas Uniform Commercial Code, the Code's four year statute of limitations as set forth in Section 2.725 should be applied to the case at bar. In response appellee argues that the U.C.C. does not apply to actions for personal injury and therefore the general statute of limitations for personal injury should be applied. Appellee further argues that appellant cannot recover under the U.C.C. because there is no privity between the parties. Thus, the central issue on appeal is squarely drawn: whether a personal injury action allegedly based upon a breach of implied warranty under the U.C.C. is governed by the four year statute of limitations set forth in Section 2.725 of the U.C.C. or the general two year statute set forth in Article 5526. We note that this issue is one of first impression in this state and, although the question has been decided in other jurisdictions, the decisions are not in agreement.

▮ Representative of those cases which have held that the Code's four year statute of limitations governs all actions grounded upon breach of warranty are *Berry v. S. D. Searle & Co.*, 56 Ill.2d 548, 309 N.E.2d 550 (1974); *Sinka v. Northern Commercial Co.*, 491 P.2d 116 (Alaska 1971); *Redfield v. Mead, Johnson & Co.*, 512 P.2d 776 (Or. 1973); *Layman v. Keller Ladders, Inc.*, 224 Tenn. 396, 455 S.W.2d 594 (1970); *Val Decker Packing Co. v. Corn Products Sales*

---

1. Tex.Rev.Civ.Stat.Ann. Art. 5526(4) (Vernon 1980) provides:
   Art. 5526. Actions to be commenced in two years.
   There shall be commenced and prosecuted within two years after the cause of action shall

have accrued, and not afterward, all actions or suits in court of the following description: * *

6. Action for injury done to the person of another.

*Co.*, 411 F.2d 850 (6th Cir. 1960); and *Morton v. Texas Welding & Manuf. Co.*, 408 F.Supp. 7 (S.D.Tex.1976). These cases have analyzed the issue by applying basic rules of statutory interpretation to ascertain the intent of the legislature in adopting the Code, and have relied upon a literal interpretation of its express language. However, after a careful examination of the question, we decline to follow this position but rather hold that in the absence of a contractual relationship between the parties, actions involving breach of implied warranty for personal injury do not come within Section 2.715(b)(2) and therefore, should be governed by Article 5526, the general statute of limitations applicable to personal injury actions. To adequately articulate the rationale involved in our decision we find it necessary to briefly sketch the historical development of the doctrine of strict liability in tort.

The development of the modern doctrine of strict liability has been both tortuous and complex primarily because the doctrine originated from the law of warranty which has historical roots in both contract and tort law. The historical origins of the law of warranty have been artfully traced by Dean Prosser:

> The seller's warranty is a curious hybrid, born of the illicit intercourse of tort and contract, unique in the law. In its inception the liability was based on tort, and the action was on the case; and it was not until 1778 that the first decision was reported in which the plaintiffs proceeded upon a contract theory. Thereafter the warranty gradually came to be regarded as a term of contract of sale, express or implied, *for which the normal remedy is a contract action.* W. Prosser, Law of Torts § 395 at 634 (4th ed. 1971).

The inherent duality of the law of warranty and confusion it produced was recognized in the early Texas decision of *Jacob E. Decker & Sons, Inc. v. Capps*, 139 Tex. 609, 164 S.W.2d 828 (1942), wherein the Supreme Court held a non-negligent manufacturer who had sold contaminated food to a retailer liable to the ultimate consumer. In explaining the doctrinal basis of the decision the court stated:

> While a right of action in such a case is said to spring from a "warranty" it should be noted that the warranty here referred to is not the more modern contractual warranty, but is an obligation imposed by law to protect the public health . . . It is believed that much of the confusion among the courts on this question is due to the failure to note this difference in the use of the term "warranty" . . . Here the liability of the manufacturer and the vendor is imposed by operation of law as a matter of public policy for the protection of the public, and is not dependent on any provision of the contract, either expressed or implied. 164 S.W.2d 831–32.

However, it soon became apparent that utilization of Decker's "implied warranty as a matter of public policy" to impose liability upon a remote manufacturer created both conceptual and practical problems because of the inherent difficulty in maintaining the distinction between the tortuous and contractual branches of the implied warranty tree. The concept "warranty" had become so closely associated with contract theory in the minds of most courts and lawyers that contract rules were assumed to apply to it; this created serious problems where no contract existed between the parties, or where the seller made no representations to the ultimate consumer or where the consumer did not know the identity of the seller. The difficulties were further compounded by the warranty provisions of the Uniform Sales Act and the Uniform Commercial Code which had been drafted only with the intent of governing the relations between immediate buyers and sellers. The traditional sales defenses of notice (U.C.C. § 2.607), disclaimer (U.C.C. § 2.316), and privity (U.C.C. § 2.318) against an action for breach of warranty were completely inconsistent with the far reaching imposition for liability under the "tort" branch of the implied warranty doctrine.

It therefore became apparent that the use of the term "warranty"—as a pseudonym for the doctrine of strict liability in

tort—was creating an impossibly entangled conceptual morass and the obvious suggestion arose to adopt a new theory to accomplish the desired result.[2]

The drafters of the Second Restatement of Torts completely discarded the "warranty" label and drafted Section 402A which provides for liability based on strict liability in tort.[3] Because comment m. of 402A makes the intent and scope of Section 402A abundantly clear we take the liberty of quoting extensively from that comment:

m. "Warranty." The liability stated in this section does not rest upon negligence. It is strict liability, similar in its nature to that covered by Chapters 20 and 21. The basis of liability is purely one of tort.

A number of courts, seeking a theoretical basis for the liability, have resorted to a "warranty," either running with the goods sold, by analogy to covenants running with the land, or made directly to the consumer without contract. In some instances this theory has proved to be an unfortunate one. Although warranty was in its origin a matter of tort liability, and it is generally agreed that a tort action will still lie for its breach, it has become so identified in practice with a contract of sale between the plaintiff and the defendant that the warranty theory has become something of an obstacle to the recognition of the strict liability where there is no such contract. There is nothing in this Section which would prevent any court from treating the rule stated as a matter of "warranty" to the user or consumer. But if this is done, it should be recognized and understood that the "warranty" is a very different kind of warranty from those usually found in the sale of goods, and that it is not subject to the various contract rules which have grown up to surround such sales.

The rule stated in this Section does not require any reliance on the part of the consumer upon the reputation, skill, or judgment of the seller who is to be held liable, nor any representation or undertaking on the part of that seller. The seller is strictly liable although, as is frequently the case, the consumer does not even know who he is at the time of consumption. The rule stated in this Section is not governed by the provisions of the Uniform Sales Act, or those of the Uniform Commercial Code, as to warranties; and it is not affected by limitations on the scope and content of warranties, or by limitation to "buyer" and "seller" in those statutes. Nor is the consumer required to give notice to the seller of his injury within a reasonable time after it occurs, as is provided by the Uniform Act. The consumer's cause of action does not depend upon the validity of his contract

2. "All this is pernicious and unnecessary. No one doubts that, unless there is privity, liability to the consumer must be in tort and not in contract. There is no need to borrow a concept from the contract law of sales; and it is 'only by some violent pounding and twisting' that 'warranty' can be made to serve the purpose at all. Why talk of it? If there is to be strict liability in tort, let there be strict liability in tort, declared outright, without any illusory contract mask. Such strict liability is familiar enough in the law of animals, abnormally dangerous activities, nuisance, workmen's compensation, and respondeat superior. There is nothing so shocking about it today that it cannot be accepted and stand on its own feet in this new and additional field, provided always that public sentiment, public demand, and 'public policy' have reached the point where the change is called for." Prosser, The Assault Upon the Citadel, 69 Yale L.J. 1099, 1134 (1960).

3. 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

with the person from whom he acquires the product, and it is not affected by any disclaimer or other agreement, whether it be between the seller and his immediate buyer, or attached to and accompanying the product into the consumer's hands. In short, "warranty" must be given a new and different meaning if it is used in connection with this Section. It is much simpler to regard the liability here stated as merely one of strict liability in tort. Thus, with the advent of 402A it has become well-accepted that an action based on strict products liability sounds in tort and not in contract. *Victorson v. Bock Laundry Machine Co.*, 37 N.Y.2d 395, 373 N.Y.S.2d 39, 42, 335 N.E.2d 275, 278 (1975); *Goldberg v. Kollsman Instrument Corp.*, 12 N.Y.2d 432, 240 N.Y.S.2d 592, 191 N.E.2d 81 (1963); *Heavner v. Uniroyal, Inc.*, 63 N.J. 130, 305 A.2d 412 (1973).

Our Supreme Court has repeatedly emphasized the distinction between strict liability in tort and contractual actions based on the U.C.C. and has further emphasized that the two doctrines should be separated, consistent with their respective intent and scope. In *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77 (Tex.1977) the court quoted with approval the classic statement of the distinction between the two doctrines by Justice Traynor in *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965):

> The law of sales has been carefully articulated to govern the economic relations between suppliers and consumers of goods. The history of the doctrine of strict liability in tort indicates that it was designed, not to undermine the warranty provisions of the sales act of the Uniform Commercial Code but, rather, to govern the distinct problem of physical injuries. 45 Cal.Rptr. at 21, 403 P.2d at 149.

Thus, in *Nobility Homes* the Supreme Court rejected Decker's "implied warranty imposed by operation of law as a matter of public policy" and stated that the adoption of 402A in *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787 (Tex.1967) and the codification of the U.C.C. should determine a manufacturer's liability. In that decision, the court held that an action for economic loss may not be brought under a theory of strict liability in tort because there was no showing of physical harm or damage but rather must be brought under the U.C.C. because the "Code was drafted specifically to govern commercial losses and obviously provides the proper remedies to recover such losses." 557 S.W.2d at 80. In *Mid-Continent Aircraft v. Curry County Spraying Service*, 572 S.W.2d 308 (Tex.1978) the Supreme Court again affirmed the distinction between the U.C.C. and 402A and emphasized the necessity of clearly separating the theoretical bases of the two doctrines. The court stated:

> The Uniform Commercial Code was adopted by the Legislature as a comprehensive and integrated act to facilitate the continued expansion of commercial practices. (citation omitted). For sales of products the above purpose is carried out by Article 2 of the Code, which supplies a complete framework of rights and remedies for transacting parties. In light of the Code's scope and purpose, its terms should not be nullified by applying strict liability when the parties have contracted otherwise. *Such an expansion of strict liability would frustrate the Code's purposes of codifying the law of commercial transactions by displacing its applicability in all cases where the sale of faulty products is involved.* 572 S.W.2d 312.

An examination of the "Sales" chapter of the U.C.C. indicates that this distinction is sound. Fundamentally, the chapter is commercially and contractually oriented. Its basic structure contemplates contractual transactions for the sale of goods between a buyer and a seller in the conventional commercial environment. For example, the remedies section of the Code is, with the exception of 2.715(b)(2), exclusively directed toward recovery of economic loss for the breach of a contract for the sale of goods or for expenses associated with the delivery, transportation, care, and custody of goods "identified to the contract."

■ Section 2.715(b)(2) does, however, purport to allow a buyer to recover from a seller consequential damages for personal injuries proximately resulting from the seller's breach of warranty. We conclude that this section does not apply to actions for personal injury based on a theory of breach of implied warranty except where the suit is between the buyer and the immediate seller and even then, "only on the basis of a 'warranty' in the commercial sales sense as provided for in the chapter."[4] *Heavner v. Uniroyal, Inc.*, supra, 305 A.2d at 425. See *Becker v. Volkswagen of America, Inc.*, 52 Cal.App.3d 794, 125 Cal.Rptr. 326 (Court of App. [First Dist. Civ. 2, 1975]); *Salvador v. Atlantic Steel Boiler Co.*, 256 Pa.Super. 330, 389 A.2d 1148, 1154 (1978); *Victorson v. Bock Laundry Machine Co.*, supra.

To hold otherwise and allow recovery for personal injury under a theory of breach of implied warranty without a contractual relationship between the parties would effectively destroy the theoretical distinction between 402A and the U.C.C. For example, any consumer injured by a defective product, even though no contractual relationship existed between the parties, could allege a cause of action under the U.C.C. based on a theory of a "breach of implied warranty of merchantability in that the product was unsafe" as the appellant did in this case. This would re-create the very same problems which resulted from the basic incongruity between the traditional sales defenses of notice, disclaimer and privity and the extensive imposition of liability under the doctrine of strict liability in tort which the adoption of 402A in this state sought to abrogate.[5] This result would, in essence, constitute a regression to the Decker "implied warranty as a matter of public policy"

which was rejected by the Supreme Court in *Nobility Homes.* A consumer who is injured by a defective product and who has no contractual relationship with the seller may recover under 402A; there is no need to ignore the lessons of history and, once again, torture the doctrine of warranty to reach the same result. Furthermore, our conclusion is strengthened by the explicit language of Article 2 of the U.C.C.

Initially, both Sections 2.714 and 2.715, as is the entire Code, are couched in the language of "buyer" and "seller." Section 2.103(a)(1) defines "buyer" as "a person who buys or contracts to buy goods." Section 2.103(a)(4) defines "seller" as "a person who sells or contracts to sell goods." These definitional sections clearly contemplate a contractual relationship between the parties. Significantly, Section 2.714, which provides the basis for recovery of incidental and consequential damages under Section 2.715, is phrased in terms of a contractual relationship between the buyer and seller. For example, the section is entitled *"Buyer's* Damages for Breach in Regard to Accepted Goods" and further, section (a) provides "where the *buyer has accepted goods* and given notification . . ." Additionally, comment 2 of Section 2.715 states: "Subsection 2 (the consequential damages section) operates to allow the buyer, in [the] appropriate case[s], any consequential damages which are the *result of the seller's* breach." These provisions clearly envision a limitation of the consequential damage remedy to the immediate, contracting parties.

Even more significantly the language of the Code's statute of limitations indicates that it was not drafted with the intent of applying to persons other than the immediate contracting parties. Section 2.725 is

---

**4.** Section 2.318 of the Texas U.C.C. adopts a neutral approach to the question of whether a buyer may sue a party other than the immediate seller for the breach of an express or implied warranty.

**5.** We note that appellant alleged that he was a third party beneficiary of the contract between appellee and Mosteck, Inc. This is clearly an attempt to avoid the traditional sales defense of lack of privity and illustrates one of the many

problems which result from the confusion of the two doctrines. Appellant clearly was not a third party beneficiary of the contract because there is no indication that the parties intended to benefit appellant by the contract. See *Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501–503, 504 (Tex.1975); *Knight Construction Co. v. Barnett Mortgage Trust*, 572 S.W.2d 381, 382 (Tex.Civ.App.-Houston [14th Dist.] 1978, writ ref'd n.r.e.).

entitled "Statute of Limitations in *Contracts* for Sale" and is directed solely to the actual parties of the commercial transaction. For example, Section 2.725(a) provides " . . . By *the original agreement* the *parties* may reduce the period of limitation . . . " and Section 2.725(b) provides "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Moreover, the comments to the section illustrate its basic scope:

> Purposes: To introduce a uniform statute of limitations for *sales contracts*, thus eliminating the jurisdictional variations . . . This Article takes *sales contracts out* of the general laws limiting the time for *commencing contractual* actions and selects a four year period as the most appropriate to modern *business* practice. [emphasis added]

In the case at bar it is undisputed that there is no contractual relationship between the appellant and the appellee. Therefore the appellant did not have a cause of action for recovery of personal injuries under 2.715(b)(2) of the Uniform Commercial Code and cannot benefit from the Code's four year statute of limitations. The gravamen of appellant's cause of action is an action based on strict liability in tort for the recovery of personal injuries by an allegedly defective product. The appellant's cause is grounded in tort and should have been brought under 402A. Therefore Article 5526, the two year statute of limitations for personal injuries, governs this case. See *Holifield v. National Cylinder Gas Div. of Chemetron Corp.*, 542 S.W.2d 218 (Tex.Civ.App.-Waco 1976, writ ref'd n.r.e.)

Having determined that Article 5526 applies to this case, it follows that appellant is barred from recovery and the trial court did not err in granting appellee's motion for summary judgment.

Judgment of the trial court is affirmed.