Raymond HAFER and Sheryl Hafer

v.

FIRESTONE TIRE & RUBBER CO.

Civ. A. No. 79–2880.

United States District Court,
E. D. Pennsylvania.

Oct. 6, 1981.

M. Mark Mendel, Ltd., M. Mark Mendel, Philadelphia, Pa., for plaintiffs.

Dechert, Price & Rhoads, Jeffrey G. Weil, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

EDWARD R. BECKER, District Judge.

Before us, on a motion for summary judgment, is the question whether this products liability action is barred by the application of Pennsylvania's "borrowing statute." The action was occasioned by the sudden blowout of a Firestone radial tire in Quebec, Canada, resulting in injury to the plaintiff, Raymond Hafer, who was driving the car on which the tire was mounted. The accident occurred on July 30, 1977. Suit was filed on July 2, 1979, within all potentially applicable Pennsylvania statutes of limitations for such a claim, but beyond the Quebec statute of limitations.

Under the borrowing statute, Pennsylvania courts are instructed to look to the statute of limitations of the state where the cause of action "arose," if that foreign state's statute of limitations would bar the claim.[1] The questions of where the cause

---

1. The present Pennsylvania borrowing statute, which became effective on June 27, 1978, reads as follows:

    The period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim.

    42 Pa.C.S. § 5521(b). This statute replaced 12 P.S. § 39 (repealed 1978):

    When a cause of action has been fully barred by the laws of the State or Country in which it arose, such bar shall be a complete

of action arose and whether the foreign state's statute of limitations bars the claim are both at issue in this case. As will be seen, if the cause of action arose in Quebec, plaintiffs' claims are time barred and summary judgment must be granted for the defendant.

The operative facts are not in dispute. Plaintiff Raymond Hafer, who then lived in Pennsylvania, purchased the motor vehicle involved in the accident from a new car dealer in Pennsylvania.[2] The car was equipped with tires manufactured in Quebec by defendant Firestone Canada, Inc. The accident occurred when Hafer and his wife, on vacation, were traveling through Quebec; a tire blew out and Hafer's car swerved and left the road, causing him personal injuries.

The complaint contains four counts: Hafer's claims against Firestone in negligence, strict liability, and breach of warranty, and the claim of his wife, Sheryl Hafer, for loss of consortium. The suit was originally filed on July 2, 1979, in the Court of Common Pleas of Philadelphia County against Firestone Rubber Company, the parent company of the present defendant. The case was subsequently removed to this court on diversity of citizenship grounds. In March of 1980 plaintiffs amended their complaint to substitute Firestone Canada, Inc., a wholly owned subsidiary of the original defendant.

In June 1980, invoking the Pennsylvania borrowing statute, Firestone Canada moved for summary judgment, asserting that the cause of action arose in Quebec and that plaintiff's suit was barred under Quebec's one-year personal injury statute of limitations. Plaintiffs respond that the borrowing statute is inapplicable, and support this response with three basic arguments. First, they contend that the choice of law rules enunciated in *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964), and its progeny must be used to determine where the cause of action arose. Asserting that Pennsylvania was the situs of the most significant contacts, plaintiffs submit that Pennsylvania, and not Quebec, law must apply. Secondly (and alternatively), plaintiffs submit that, under any view of the facts, the cause of action arose not in Quebec, where the accident occurred, but in Pennsylvania where the tire, which was original equipment on the new car purchased by Hafer, was sold, and hence where the implied warranty of fitness of the tire was breached. Third, plaintiffs argue that the Quebec statute of limitations does not "fully bar" plaintiffs' claims so as to render operative the plaintiffs' interpretation of the version of the borrowing statute that they contend is applicable. *See* note 1 *supra.*

Neither the first nor third arguments have even colorable merit and they will not detain us. Suffice it to say that the contention that the borrowing statute

---

defense to an action thereon brought in any of the Courts of this Commonwealth.

The plaintiffs, ascribing special significance to the use of the term "fully barred" in the previous borrowing statute, *see* discussion at pages 1218–1219 and notes 4 and 5 *infra*, contend that the earlier statute, which was in effect at the time of the Hafers' accident, is controlling. The defendant, noting that plaintiffs' action was not time-barred under any potentially applicable statute of limitations on June 27, 1978, the effective date of the new borrowing statute (which uses the term "bars" instead of "fully barred"), argues that the new version is applicable.

We have examined the provision of the Pennsylvania Judicial Code dealing with the effect of the Judicial Code on periods of limitation, Section 25(a) and (b) of Act of 1976, July 9, P.L. 586, No. 142, *see McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 659 n. 4 (3d Cir.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980), but find it not germane to solution of this problem. Fortunately, however, we need not determine which borrowing statute is applicable, for two reasons. First, we do not perceive any difference between the legal effect of the two statutes, viewing the differences essentially as a matter of drafter's choice. Second, even if there is some difference, for the reasons set forth in note 5 *infra*, that difference does not help plaintiffs to advance their argument founded upon the legal distinction between statutes of limitations that extinguish a right and those that merely bar a remedy.

2. Since institution of this action, founded on diversity of citizenship, Hafer and his wife, a co-plaintiff, have moved to Florida.

must be construed in terms of the *Griffith* analysis was expressly rejected by the Third Circuit in the leading case in this area, *Mack Trucks, Inc. v. Bendix-Westinghouse Automotive Air Brake Co.*, 372 F.2d 18 (3rd Cir. 1966), *cert. denied*, 387 U.S. 930, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967).[3] Moreover, plaintiffs' interpretation of the Quebec statute of limitations as not fully barring plaintiffs' claims[4] but only qualifying a given right is untenable.[5] Therefore, we will devote the remainder of this opinion to a discussion of the issues raised by plaintiffs' second contention.

■ The notion of where the cause of action arose, while appearing simple at first

3. Plaintiffs ask us to "reconsider" *Mack Trucks* and adopt the reasoning of its dissent. Judge Freedman, the dissenting judge, argued that the Pennsylvania borrowing statute "must have had a broader purpose of assuring that the decision as to when the claim should be barred would be governed by the policy of the jurisdiction of the most significant interest in the claim...." 372 F.2d at 25 (Freedman, J. dissenting). *Mack Trucks* was decided by the Third Circuit, and thus, even if we were persuaded by Judge Freedman's dissent, we would be powerless to adopt it. Indeed, only the Court of Appeals sitting *en banc* can reverse a prior panel decision. *See* United States Court of Appeals for the Third Circuit, Internal Operating Procedures, Ch. VIII, § C (1978).

4. The language "fully barred" on which plaintiffs rely is taken from the earlier version of the statute. *See* note 1 *supra*.

5. Plaintiffs' distinction between a statute of limitations which extinguishes a right and one which merely bars a remedy is not unknown to the law. In *Bournias v. Atlantic Maritime Co.*, 220 F.2d 152 (2d Cir. 1955), for example, the court examined the applicable one-year Panama statute of limitations contained in Panama's labor code, and concluded that because it was *not specifically directed to the rights of seamen*, it only barred the remedy in Panama, but did not extinguish the right elsewhere. Because the suit was brought not in Panama, but in New York, the plaintiff's cause of action was permitted to proceed. The Second Circuit used a "specificity" test, modeled after the Supreme Court's decision in *Davis v. Mills*, 194 U.S. 451, 24 S.Ct. 692, 48 L.Ed. 1067 (1904), to determine whether the bar was absolute. Under that test, a statute of limitations extinguishes the right if it specifically relates to a particular cause of action. *See* Restatement (Second) of Conflict of Laws § 143, Comment c and Reporter's Notes; Note, *Statutes of Limitations, Lex Loci or Lex Fori*, 47 Va.L.Rev. 299 (1961).

Plaintiffs' characterization of the Quebec statute of limitations for personal injury as a mere procedural bar to the remedy rather than an absolute extinction of the right is, however, without foundation. Article 2267 of the Quebec Civil Code provides:

In all cases mentioned in Article 2250, 2260, 2261 and 2262 [the last being the one-year statute of limitations at issue in this case] the debt is *absolutely extinguished* and no action can be maintained after the delay for prescription has expired.

(emphasis added). The legislative prescription embodied in the Quebec statute is stronger than the common law prescription, which is subject to a variety of interpretations as suggested by the controversy in *Bournias*. There can hardly be a stronger statement of an absolute bar to a claim brought either in Canada or elsewhere than this one. *See Henry v. Richardson-Merrell, Inc.*, 366 F.Supp. 1192 (D.N.J. 1973), *rev'd on other grounds*, 508 F.2d 28 (3d Cir. 1975), in which the district court, relying on Article 2267, held that Quebec's statute of limitations was a substantive time-bar.

The two cases plaintiffs cite in support of their view to the contrary, *Goodwin v. Townsend*, 197 F.2d 970 (3d Cir. 1952), and *Kozan v. Comstock*, 270 F.2d 839 (5th Cir. 1959), are inapposite. Neither case dealt with the Quebec Civil Code provision before us. In *Goodwin*, the statute of limitations of the Ontario Traffic Act was interpreted by the Third Circuit as merely barring a remedy. The court's conclusion that the Ontario statute did not extinguish the right was only dictum, for the decision rested on the fact that the Pennsylvania statute of limitations, not Ontario's, was applicable. In *Kozan*, the Fifth Circuit was called upon to determine whether the statute of limitations of the forum state—Louisiana—or the foreign state—Indiana—should apply. Noting that the general rule that prescription is procedural and forum law governs, is subject to the exception that the foreign statute will control if it not only bars the remedy but extinguishes the right as well, the court explained that a substantive right can be extinguished by a limitations statute only when the right in question was not known at common law but was statutorily created. Because the cause of action at issue in *Kozan* was well-known at common law, the substantive right was held not to be extinguished by the statute of limitations; therefore, the exception to the general rule was held not to apply, and the law of the forum state was held to govern. Beyond the obvious fact that the Fifth Circuit's conclusion regarding an Indiana statute of limitations has no relevance to this case, *Kozan* is also inapposite in that it deals not with a borrowing statute, but rather with a court-made choice of law exception.

blush, is complicated by the checkered case law. We begin with Judge Hastie's observation in *Mack Trucks* that:

> The Pennsylvania borrowing statute utilizes this concept of the arising of a cause of action in relation to place rather than time in order to specify the circumstances in which a Pennsylvania court shall apply another state's statute of limitations and to identify the appropriate state. We think the concept of when a cause arises and the concept of where a cause arises, both used to aid in the application of statutes of limitations, are *in pari materia*. In other words, *the cause arises where as well as when the final significant event that is essential to a suable claim occurs.*

372 F.2d at 20 (emphasis added). One approach to the case—a common sense approach—would posit that the cause of action arose in Quebec, because that is where the final significant event essential to a suable claim occurred, *i. e.*, the blowout of the tire and the consequent injury to Mr. Hafer. Certainly plaintiffs' tort-based (negligence and products liability) theories would compel this result, for, in tort, a cause of action arises where the negligence or defective product proximately causes an injury. In this case, that was indubitably in Quebec. We believe that the same result attains with respect to a breach of warranty claim.

We reach this conclusion notwithstanding the provisions of Section 2–725 of the Uniform Commercial Code (U.C.C.), "that a breach of warranty occurs when a tender or delivery is made." [6] That is because we perceive a difference between the occurrence of a breach and the arising of a cause of action. The *Mack Trucks* formulation—that the cause arises when the final significant event essential to a suable claim occurs—is consistent with this view, for a causal nexus between product defect and injury (supplied by the facts of the accident) is a predicate for a suable claim.

While we might rest on this analysis, in view of the vigor with which plaintiffs advance their contentions, we prefer to give more detailed consideration to the question whether plaintiffs' cause of action for breach of implied warranty arose at the place and the time of the accident (in Quebec) or at the time of the delivery to Mr. Hafer of the putatively defective tire mounted on the new car (in Pennsylvania). We conclude however, that even if we apply the Pennsylvania law advanced by plaintiffs on the point, the cause of action must be deemed to have arisen in Quebec.[7] That

**6.** 13 Pa.C.S. § 2725 provides in part:
    (b) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. *A breach of warranty occurs when tender of delivery is made. . . .*
(emphasis added).

**7.** We are not materially assisted by an analysis of the most recent Third Circuit case dealing with the Pennsylvania borrowing statute, *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657 (3d Cir.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). In *McKenna*, the plaintiffs sued for negligence, misrepresentation, and products liability, alleging that Mrs. McKenna had suffered severe personal injury and permanent disability as a result of ingesting an oral contraceptive manufactured and marketed by Ortho. Mrs. McKenna had begun using the contraceptive in January 1965, developed severe headaches and other complications in 1967, was hospitalized for a serious complication in 1969 (presumably in the spring), and ceased using the contraceptive in June 1969. Three years later, in March 1972, she suffered a catastrophic stroke and in November 1973, commenced the action in Pennsylvania. Addressing the statute of limitations defense invoked by the defendant, and with a view to determining the applicability of Pennsylvania's borrowing statute, the Third Circuit noted that inasmuch as all of the significant events pertinent to the action occurred in Ohio, it was not disputed that the cause of action arose in Ohio and that "under Pennsylvania's conflict of law rules, *see Griffith v. United Air Lines, Inc.*, . . . the substantive law of Ohio governs this action." 622 F.2d at 659 n. 3. Notwithstanding plaintiffs' intimation to the contrary, we do not read this passage from *McKenna* as undermining *Mack Trucks*' conclusion as to the role of *Griffith* in borrowing statute analysis, but rather as matter-of-factly stating the substantive law applicable to the action. Under the facts of McKenna, there was no dispute that the cause of action arose in Ohio and thus the court was bound to look to the borrowing statute to determine whether the Ohio limitation period was shorter than Pennsylvania's. The difficult question before the

is because, in the wake of the decision in *Salvador v. Atlantic Steel Boiler Co.*, 256 Pa.Super. 330, 389 A.2d 1148 (1978) (Salvador II), we believe that Pennsylvania would construe Hafer's action for personal injuries based upon a warranty theory as nonetheless sounding in tort.

The current Pennsylvania trend in products liability cases of abolishing the distinction between breach of warranty and tort began with the elimination of the vertical privity requirement for a breach of warranty claim, *see Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968). It continued with the abolition of the horizontal privity requirement. *See Salvador v. I. H. English of Philadelphia, Inc.*, 224 Pa.Super. 377, 307 A.2d 398 (1973), *aff'd sub nom., Salvador v. Atlantic Steel Boiler Co.*, 457 Pa. 24, 319 A.2d 903 (1974) (Salvador I). Basing its decision on the logic of these earlier cases, the *Salvador II* court advanced the trend still further by holding: (1) that the *four-year* statute of limitations for breach of warranty actions under the Pennsylvania U.C.C., now codified at 13 Pa.C.S. § 2725, should not be applied to a third-party personal injury arising from a defective product, but rather that the two-year tort statute of limitations should apply; and (2) that the statute should ordinarily begin to run from the date of injury (the rule for a tort claim) and not from the date of the sale of the goods (the rule with respect to a warranty claim). The rationale for the court's decision was what it described as the "inexorable trend toward legal symmetry in this area." 389 A.2d at 1153.

While it may be that in the case of a suit by a direct purchaser against the seller (or even against the manufacturer behind him in the vertical chain) the Pennsylvania courts, because of the literal terms of the statute, might still apply the four-year U.C.C. statute of limitations measured from the sale of the goods,[8] given the language of *Salvador II* quoted above and the direction the Pennsylvania cases have taken, we conclude that Pennsylvania would apply a tort-based standard[9], hence we construe its borrowing statute to mean that a warranty action arises where the accident which gave rise to the suable claim occurs.[10]

court related to tolling, *i. e.*, the question of what law determined *when* the applicable Ohio statute of limitations commenced to run.

*McKenna* held that the Pennsylvania borrowing statute required it to look to the law of the state where the cause of action arose not only for the applicable limitation period but also to determine the point at which the statute of limitations begins to run. In so holding, the court rejected the argument of the McKennas that this question must be determined by Pennsylvania law, an argument premised upon the McKennas' reading of *Mack Trucks* to the effect: (1) that *Mack Trucks* ascertainment of where the cause of action arose was in turn based upon the prior determination of when it accrued; and (2) that *when* the cause of action arose was determined by reference to Pennsylvania law. As we have noted above, the *McKenna* court concluded that the cause of action arose in Ohio because all the significant events occurred in Ohio. Whether the *McKenna* court was suggesting that the "where" may be more significant than the "when" in making the determination of where the cause of action arose is problematical, though possible. *See* n.10, *infra*.

**8.** *See Peeke v. Penn Central Transp. Co.*, 403 F.Supp. 70 (E.D.Pa.1975), *aff'd*, 538 F.2d 320 (3d Cir. 1976). This possibility is not expressly ruled out in *Salvador II*, or in *Hahn v. Atlantic*

*Richfield Co.*, 625 F.2d 1095 (3d Cir. 1980), neither of which dealt with a suit by a direct purchaser.

**9.** We are guided in our deliberations on this point by the principles enunciated in Judge Adams' opinion in *Becker v. Interstate Properties*, 569 F.2d 1203 (3d Cir. 1977), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978).

**10.** We note that such a result is consistent with the original tenor of Judge Hastie's description of Pennsylvania law in *Mack Trucks, i. e.*, as viewing the *place* where the cause of action arose as critical. See the initial sentence of the quotation on page 1219, *supra*.

We also note that Quebec would reach the same result under Article 2262 of the Quebec Civil Code, a unitary one-year statute of limitations that covers "bodily injuries." The Quebec Superior Court held in *Beach v. Avis*, No. 500–05–017518–778 (March 30, 1978), that this one-year statute of limitations bars claims for personal injury whether they are captioned as tort or as contract actions:

[S]ince the decision of the Supreme Court of Canada in *Hospital Notre-Dame v. Patry* (1975, 2 S.C.R. 388), the distinction between delictual fault and contractual fault in an

In sum, we conclude that: (1) the plaintiffs' claim (whether it sounds in tort or contract) is barred by Quebec's statute of limitations because it was not brought within one year of the date of the accident; (2) plaintiffs' cause of action arose in Quebec; and (3) because the cause of action is barred by the laws of the jurisdiction in which it arose, it is likewise barred in Pennsylvania by the application of the Pennsylvania borrowing statute.[11] Although we believe this result to be unfortunate and perhaps untoward,[12] the inexorable operation of the borrowing statute leaves us no choice but to grant summary judgment for the defendant.[13] An appropriate order follows.

action based on bodily injuries cannot be made, for purposes of Article 2262 C.C.

11. Because plaintiff Sheryl Hafer's claim for loss of consortium is derivative, her claim is barred like her husband's. *Little v. Jarvis*, 219 Pa.Super. 156, 280 A.2d 617 (1971).

12. The result may be thought harsh because the plaintiffs filed suit within two years of the accident, a reasonable limitation period. It may be that the Third Circuit will wish to reconsider *Mack Trucks*, or that Pennsylvania will wish to modify its borrowing statute.

13. Even if we were to apply a *Griffith*-type interest analysis/significant contacts test, *see Melville v. American Home Assurance Co.*, 584 F.2d 1306 (3d Cir. 1978), we might in any event be required to apply the law of Quebec, where the allegedly defective tires were manufactured and on whose highways the accident, injuring a tourist, occurred. By comparison, the only contacts with Pennsylvania—the plaintiffs' purchase of their car and their residence at the time of the accident—may be less weighty. We do not, however, decide this question.