389 A.2d 1148

Ahmed SALVADOR, Appellant,

v.

ATLANTIC STEEL BOILER COMPANY, I. H. English of Philadelphia, Inc., Irwin H. English Company, Walter K. Mueller and Julia M. Mueller, his wife

**and**

United Machine & Tool Company, Walter K. Mueller, and Julia M. Mueller, his wife and McKelvey Bros.

Superior Court of Pennsylvania.

Argued Sept. 20, 1977.

Decided July 12, 1978.

Carl M. Mazzocone, Philadelphia, for appellant.

Charles W. Craven, Philadelphia, with him Thomas H. Goldsmith, Philadelphia, for appellees, Atlantic Steel Boiler Co., I. H. English of Phila., Inc., and Irwin H. English Co.

James W. Hennessey, Norristown, with him Simon Pearl, Philadelphia, for appellees, Mueller, et ux.

No appearance entered nor brief submitted for appellee, United Machine & Tool Co.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

The instant case has previously climbed the appellate ladder to the summit, and the result was the abolition in Pennsylvania of the requirement of horizontal privity as a condition precedent to the maintenance of a products liability claim for breach of warranty under the Uniform Commercial Code, 12A P.S. § 1–101 et seq. (1970). *Salvador v. Atlantic Steel Boiler Co.*, 224 Pa.Super. 377, 307 A.2d 398 (1973), on appeal 457 Pa. 24, 319 A.2d 903 (1974). As has been the parties' plight, the instant appeal, from the lower court's order on remand granting summary judgment for defendants, raises another beclouded question in the body of Pennsylvania jurisprudence; to-wit: On a third party claim for personal injuries under the warranty provisions of the Uniform Commercial Code, where is the applicable statute of limitations to be found, and when does it begin to run?

In 1962, the S. H. English Company installed a boiler on business premises then owned by Walter Mueller and, apparently, his wife. The boiler had been manufactured by Atlantic Steel Boiler Company. In 1964 Mr. Salvador's employer, United Machine & Tool Company, purchased the

Mueller's company, lock, stock and boiler. However, it was not until May of 1967, while Mr. Salvador was engaged in his work for United, that the boiler exploded causing Mr. Salvador to suffer a substantial bilateral hearing loss. As a result of his injuries, on March 29, 1971 Mr. Salvador filed a writ of summons in assumpsit and trespass charging Atlantic Steel Boiler, English and the Muellers with liability for the explosion.

Following service of the complaint, the parties defendant initially filed preliminary objections in the nature of demurrers. Relying on *Hochgertel v. Canada Dry Corp.,* 409 Pa. 610, 187 A.2d 575 (1963) the defendants urged, and the court below agreed, that Mr. Salvador could not maintain a suit for breach of warranty under Section 2–318 of the Code because he was merely the employee of the purchaser of the boiler; in other words, he was not "in privity of contract." On appeal to this court we reversed, finding that *Hochgertel* had been effectively overruled by *Kassab v. Central Soya,* 432 Pa. 217, 246 A.2d 848 (1968). The Supreme Court affirmed per an opinion by Mr. Justice Roberts.

On remand to the trial court, the defendants filed answers and new matter raising the defense of the statute of limitations. With respect to Mr. Salvador's claim for relief under Section 402A of the Restatement of Torts, 2d, adopted in Pennsylvania in *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966), defendants' argued the suit was barred by the two-year statute of limitations which began to run on the date of the injury in May, 1967. Act of June 24, 1895, P.L. 236, § 2, 12 P.S., § 34 (1953). With respect to Mr. Salvador's claim under U.C.C. § 2–318, defendants argued that the suit was barred by the Code's four-year statute of limitations which began to run from the date of tender of delivery of the boiler, and had expired prior to the filing of suit regardless of which delivery date of the boiler from the various defendants was deemed operative. Uniform Commercial Code, 12A P.S. § 2–725 (1970). Once again the court below agreed with the arguments advanced by the defendants and, on defendants' motion, granted summary judgment in their

favor on both the warranty and tort claims. See *Royal-Globe v. Hauck Manufacturing Co.*, 233 Pa.Super. 248, 335 A.2d 460 (1975). This appeal on Mr. Salvador's behalf ensued.

At the outset it should be noted that appellant does not waste his credibility quarreling with the propriety of the court's ruling regarding his claim for relief under Section 402A of the Restatement of Torts, 2d, as adopted in *Webb v. Zern, supra.* In light of the fact that Mr. Salvador was virtually immediately aware of his injury in May, 1967, he cannot seriously contend that he timely filed his tort claim when suit was not filed until March, 1971, some three years and ten months after the accident. Hence, the court's ruling on this aspect of the case may be summarily affirmed. However, the remaining claim under U.C.C. § 2–318 requires far more extensive consideration.

The battle lines of the parties, or at least the differences of opinion on when their conflict should have started, are clearly drawn. The defendants argue that U.C.C. § 2–725 should be literally applied so that Mr. Salvador should have filed his law suit no later than sometime in 1968; i. e., no more than four years from the date of the Mueller's sale of the business and the boiler to Mr. Salvador's employer.[1] Counsel for Mr. Salvador argues that it is nonsense to apply U.C.C. § 2–725 literally to third party personal injuries for, in many cases, the statute of limitations will have run before the injury to a third party has occurred. Indeed, if the operative date under Section 2–725 in this case were deemed to be in 1962, when the English Company installed the boiler for the Muellers, Mr. Salvador's case would fall into such a category. Instead, appellant argues that Section 2–725 should be read as beginning to run from the date of Mr. Salvador's injury. We, however,

1. It should be noted that it is academic whether Mr. Mueller's bulk sale of his business constituted a sale to which Section 2–725 applies. If defendants' interpretation of Section 2–725 obtained they would win regardless of which sale is deemed operative. We offer this caveat simply to indicate that the bulk sale question need not be reached in this case.

disagree that Section 2–725, under any construction, should be applied to third party personal injuries arising from a defective product. It is our view that the two year statute of limitations should be uniformly applied to all such cases, and that the statute should ordinarily begin to run from the date of the injury. To support this position a recapitulation of the evolution of relevant products liability law in Pennsylvania is necessary.

It is a matter of legal historical fact in Pennsylvania that strict product liability theory owes its development to the adoption of Section 402A of the Restatement of Torts, 2d in *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966). Prior to that decision, and aside from the express exceptions contained in the text of U.C.C. § 2–318, an injured person could not recover damages in strict liability if he were not in privity of contract with the defendant.[2] Furthermore, an injured plaintiff could not recover for breach of warranty from any person other than his immediate seller because, once again, the manufacturer, the wholesaler, and other persons in the distributive chain were not in privity of contract with him.[3] As the Supreme Court stated in *Hochgertel* : "[Mr. Hochgertel's] cause of action is basically one of tort and should stand or fall thereon." 409 Pa. at 610, 187 A.2d at 578. In short, the Supreme Court was not willing to abolish the supposed requirement of privity of contract under the Uniform Commercial Code, at least until it decided to create a coextensive remedy in tort.

**2.** *Hochgertel v. Canada Dry Corp.,* 409 Pa. 610, 187 A.2d 575 (1963). Mr. Hochgertel was a bartender who was injured when a bottle of carbonated soda water exploded. Since he was not the purchaser of the beverage, he was not a person to whom implied warranties extended. Compare *Yentzer v. Taylor Wine Co.,* 414 Pa. 272, 199 A.2d 463 (1964).

**3.** *Miller v. Preitz,* 422 Pa. 383, 221 A.2d 320 (1966). In this case a vaporizer malfunctioned and spewed boiling water on the infant-decedent. The Supreme Court barred causes of action in strict liability against the distributor, Rexall Drug Company, and the manufacturer, Northern Electric Company, because there was no privity of contract.

■ The adoption of 402A in *Webb v. Zern,* supra, however, rendered the doctrine of privity of contract anachronistic. If a third party plaintiff captioned his complaint "Trespass" he stated a cause of action under 402A. However, if he captioned his complaint "Assumpsit" he would lose under an identical fact situation because he could not demonstrate the requisite privity of contract. This intolerable formalistic dichotomy was removed, at least with respect to "vertical privity" in *Kassab v. Central Soya,* 432 Pa. 217, 246 A.2d 848 (1968). That case provided the Supreme Court its first settled opportunity to reconsider the viability of vertical privity as a defense to a claim for breach of warranty under the Code. The Court re-examined the law with respect to vertical privity in Pennsylvania, noted the ever-growing number of jurisdictions which had abolished it, and concluded that the doctrine should be discarded. The overriding reason for doing so was the desirability of achieving legal symmetry in the products liability area between tort and contract. As the Court stated:

> "To retain this tort-contract dichotomy with its haphazard, crazy quilt of exceptions and appendages can only cause Justice Voelker's language (speaking for the Supreme Court of Michigan when that tribunal abolished the privity requirement) to ring painfully true for the law of this Commonwealth. In commenting on the state of Michigan law under privity it was said: 'A court lacking a clear and understandable rule of its own can scarcely be expected to impart it to others, legal confusion has inevitably resulted. Aggrieved plaintiffs have scarcely known whether to sue in deceit or fraud or for negligence or breach of warranty—or indeed whether it was worthwhile to sue at all.' *Spence v. Three Rivers Builders & Masonry Supply, Inc.,* 353 Mich. 120, 90 N.W.2d 873, 878 (1958)." 432 Pa. at 234–35, 246 A.2d at 856.

Although in a footnote to *Kassab* the Supreme Court expressly reserved judgment on the continuing vitality of the horizontal privity requirement, there was little doubt from the rationale and tenor of *Kassab,* that *Hochgertel v. Cana-*

da Dry Corp. was also bad law. See Murray, Pennsylvania Products Liability: A Clarification of the Search for an Understandable Rule, 33 U.Pitt.L.Rev. 391 (1972). Thus, when the instant case was last before us and raised the question of horizontal privity, we expressly recognized what most legal scholars already expected—horizontal privity of contract was no longer a prerequisite to maintaining a cause of action under the warranty provisions of the Uniform Commercial Code. *Salvador v. Atlantic Steel Boiler Co.*, 224 Pa.Super. 377, 307 A.2d 398 (1973). The Supreme Court affirmed on virtually the identical rationale. *Salvador v. Atlantic Steel Boiler Co.*, 457 Pa. 24, 319 A.2d 903 (1974).[4] The message of *Salvador* was pellucidly clear. If 402A and the Uniform Commercial Code were to be coextensive in the area of products liability as *Kassab* had indicated,[5] the Code requirement of horizontal privity could no longer survive. Once again the point of view had prevailed that the result of a lawsuit should not depend "solely on the caption atop the complaint." [6]

The logical extension of this desirable goal of legal symmetry with respect to the statute of limitations problem would be to require the injured party to file his lawsuit within two years of the date of the injury, just as 402A in Pennsylvania currently requires. The path to that goal is not free of obstacles, however. There is case law in Pennsylvania, as well as the express language of Section 2–725 of the Code, which must be resolved to reach that conclusion.

In *Gardiner v. Philadelphia Gas Works,* 413 Pa. 415, 197 A.2d 612 (1964), the plaintiffs had been purchasers of natural gas from the defendant gas works. In January 7,

---

4. Although there was dicta in our opinion which suggested that the four year statute of limitations from the Code should be employed in this case, that question was not before us. Procedurally, the case had not yet reached the point where the defendants could plead the statute as a defense. Hence, in the Supreme Court's opinion there was no reference to the problem.

5. *Kassab v. Central Soya,* 432 Pa. at 231, 246 A.2d 848.

6. *Salvador v. Atlantic Steel Boiler Co.,* 224 Pa.Super. at 381, 307 A.2d at 401.

1961 plaintiffs were injured allegedly due to gas escaping from defendant's conduit beneath their home. After suit in assumpsit was filed on January 15, 1963, defendant argued that the two year statute of limitations in Pennsylvania applied to all actions involving personal injuries, whether the complaint were captioned assumpsit or trespass. The lower court agreed and the Gardiners appealed. The Supreme Court reversed finding that the Uniform Commercial Code applied exclusively to all actions arising thereunder, and that the Code's general repealer, Section 10–103, repealed the two-year statute of limitations for personal injuries in Code cases insofar as the two-year statute was inconsistent with Section 2–725. The force of its dictum aside, there are several factors which distinguish *Gardiner* from the instant case. First, the Gardiners were purchasers of the natural gas so that they were in privity of contract and would have been entitled to recover for breach of warranty even under the doctrine of *Hochgertel v. Canada Dry Corp.* Second, when *Gardiner* was decided the Code offered the only remedy for defective products which permitted the use of a strict liability theory, because *Webb v. Zern* had not been decided. Finally, Section 10–103 of the Code could not have repealed the two-year statute of limitations with respect to third party personal injuries because, as *Hochgertel* would establish, the Code provided no remedy for such injuries, except to the limited extent specifically set forth in Section 2–318. Hence, even were it not for the inexorable trend toward legal symmetry in this area as discussed above, *Gardiner* would not be a formidable barrier to our applying the two-year statute of limitations in this case.

Although *Gardiner* left open the question of when the Code's four year statute began to run; that question did not remain open for long. In *Rufo v. Bastian-Blessing Co.,* 417 Pa. 107, 207 A.2d 823 (1965) the Supreme Court addressed the question of when Section 2–725 begins to run in cases involving personal injuries to the purchaser of a product; i. e. whether the four-year period begins to run from the date of the purchase or the date of the injury. In March, 1956

Mr. Rufo purchased a portable cylinder of liquified gas for use in a torch. Allegedly as a result of a defect in the valve on the cylinder, which had been manufactured by Bastian-Blessing, gas escaped and caught fire causing personal injuries to Mr. Rufo, as well as property damage to Mr. Rufo and others. Although this accident occurred on December 8, 1957, suit was not filed until July 12, 1960, more than four years from the date of the purchase, but fewer than four years from the date of the injury. When the trial court dismissed Mr. Rufo's complaint because the statute of limitations had expired, he appealed. The Supreme Court applied Section 2–725 of the Code literally and found: (1) The cause of action accrued when the breach occurred; (2) The breach occurred when the tender of delivery was made in March of 1956 regardless of Mr. Rufo's lack of knowledge of the breach; (3) Therefore, Mr. Rufo was out of time when he filed his complaint in July, 1960. It should be obvious, however, that *Rufo v. Bastian-Blessing Co.* is distinguishable from this case for the same reasons which distinguish *Gardiner v. Philadelphia Gas Works,* supra; that is, the plaintiff was explicitly afforded a remedy under the Uniform Commercial Code as a purchaser of the defective product, and Pennsylvania had not yet adopted Section 402A of the Restatement of Torts, 2d as an alternative remedy. Thus, neither *Gardiner* nor *Rufo,* even when read together, compel us to accept the defendants' principal argument in this case, that Mr. Salvador was required to file suit under the Uniform Commercial Code no later than four years after his company's purchase of the boiler from the Muellers in 1964.

Having determined that our decision in this case is not circumscribed by prior case law,[7] the question remains whether Section 2–725 by its very terms applies to third party personal injury claims. Section 2–725 of the Uniform Commercial Code provides:

7. In attempting to apply Pennsylvania law, the federal courts have applied the four-year statute of limitations which they have deemed to begin running on the date of the sale. See *Peeke v. Penn Central Transportation Co.,* 403 F.Supp. 70 (E.D.Pa.1975) aff'd 538 F.2d 320 (3rd Cir. 1976); *Hoffman v. A. B. Chance Co.,* 339 F.Supp. 1385 (M.D.Pa.1972).

"(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."

From reading Section 2–725 it can be seen that defendants' argument is sound if their initial premise is correct; that is, if Section 2–725 applies to *all cases* seeking relief from breach of warranty, Mr. Salvador's claim was barred no later than 1968, four years after the sale of the boiler to his employer. There are, however, several compelling considerations which militate against the defendants' initial premise.

First, recalling *Hochgertel v. Canada Dry Corp.,* supra note 3, and *Miller v. Preitz,* supra note 4, the Supreme Court refused to do away with the requirements of horizontal and vertical privity, respectively, aside from cases involving those specific exceptions contained in Section 2–318 of the Code. By negative implication, therefore, the Court recognized that claims for damages arising from personal injuries to persons not in privity of contract would have to be a judicial creation. Following the adoption of 402A in *Webb v. Zern,* supra, there remained no cogent argument for not extending the protection of Section 2–318 of the Code to persons not in privity of contract. Hence, in *Kassab v. Central Soya,* supra, and *Salvador v. Atlantic Steel Boiler,* supra, the Supreme Court reversed its initial position. Regardless of the fact that the Code's breach of warranty *rubric* applies to third party personal injuries, it is nonetheless true that our Supreme Court found no express protection in the Code, so the remedy for such persons is entirely one of judicial creation. That being the case, the courts

should be free to choose and apply that statute of limitations most likely to accommodate the purposes of extending Code protection to such persons. Since virtually all jurists and scholarly commentators recognize that this strict liability recovery in a contractual context is purely a fiction created to reach a desirable social policy, the theory of recovery sounds in tort. See, e. g., *Hochgertel v. Canada Dry Corp.*, 409 Pa. at 610, 187 A.2d 575; J. White and R. Summers, Uniform Commercial Code 339–40 (1972); Murray, Products Liability—Another Word, 35 U.Pitt.L.Rev. 255, 267 (1973); Note, 36 U.Pitt.L.Rev. 477, 483 (1974).

As Professor Prosser has stated:

"The fundamental difference between tort and contract lies in the nature of the interests protected. Tort actions are created to protect the interest in freedom from various kinds of harm. The duties of conduct which give rise to them are imposed by the law, and are based primarily upon social policy, and not necessarily the will or intention of the parties." W. Prosser, Torts § 92 at p. 613 (4th ed. 1971).

If the theory sounds in tort rather than contract, it follows that the appropriate statute of limitations should be that which would be applied if the plaintiff's complaint were captioned "Trespass." In Pennsylvania that statute is two years and runs from the date of the injury.[8] That the adoption of 402A in Pennsylvania triggered the demise of privity requirements only fortifies the conclusion that plaintiff's theory is more nearly one of tort and should be limited accordingly.

■ Second, it takes a very strained reading of Section 2–725 to conclude that it was ever meant to apply to persons other than the contracting parties in breach of warranty actions. See *Victorson v. Bock Laundry Mach. Co.,* 37 N.Y.2d 395, 373 N.Y.S.2d 39, 335 N.E.2d 275 (1975) (Concurring opinion by Fuchsberg, J.). The section is entitled "Statute of Limitations in Contracts for Sale" and the entire section is directed to the ordinary buyer of goods in a typical

8. Act of June 24, 1895, P.L. 236, § 2, 12 P.S. § 34 (1953).

commercial transaction. Murray, Products Liability—Another Word, 35 U.Pitt.L.Rev. 255, 267 (1973). A breach of warranty occurs when the tender of delivery is made to the buyer who, of course, has the right to inspect and reject defective goods immediately; or, in any event, has four years from that date to use the goods and ascertain whether any implied warranties have been breached. But the tender of delivery can be wholly irrelevant to an injured third party who may have never had the opportunity to ascertain a latent defect until he is injured. If that unhappy event occurs four years and one day from the date of tender of delivery, the injured party has no remedy under Section 2–725 of the Code as of the date of injury. Under such an interpretation Section 2–725 ceases to resemble a statute of limitations, taking on instead the appearance of a legislative determination that any goods which last four years without mishap are, by definition, merchantable and fit for their particular purpose. In such a context Section 2–725 does not function like a statute of limitations; it functions as a definition of the life of a warranty. When one considers that there are any number of goods one reasonably expects to last in good and merchantable condition more than four years from the date of delivery, commercial boilers being one such class of goods, the use of Section 2–725 in such a fashion contradicts reality. Section 2–725 also states that the cause of action accrues when the breach occurs, "regardless of the aggrieved party's lack of knowledge of the breach." But, the Code defines an aggrieved party as anyone entitled to a remedy. U.C.C., 12A P.S. § 1–201 (1970). It simply cannot be said, for example, that Mr. Salvador was an aggrieved party on the date delivery of the boiler was tendered to his employer; at that time Mr. Salvador was not entitled to a remedy. This is simply another anomaly which underscores the notion that the drafters of the Code did not intend Section 2–725 to apply to claims for third party personal injuries.

Finally, the efforts of other jurisdictions, struggling with the conundrum of rationalizing all the permutations of fact situations which create special problems of interpretation

under 402A and the Uniform Commercial Code, argue persuasively that uniformity of application of the two-year statute is the only solution. See, e. g., *Quadrini v. Sikorsky Aircraft,* 425 F.Supp. 81 (D.Conn.1977); *Roberts v. General Dynamics,* 425 F.Supp. 688 (S.D.Tex.1977). New York, for a time, delayed this inevitable conclusion with *Mendel v. Pittsburgh Plate Glass Co.,* 57 Misc.2d 45, 291 N.Y.S.2d 94 (1967). In that case the plaintiff was injured when a plate glass door, manufactured by the defendant, shattered as plaintiff entered the bank where the door had been installed. The New York court had not yet adopted 402A, and refused to do so in Ms. Mendel's case. The court then turned to the Uniform Commercial Code, applied Section 2–725 literally, and determined that Ms. Mendel was barred by the statute of limitations before she was injured.[9] As would be expected, this alarming result brought considerable criticism from commentators in the field. See, e. g., Murray, Random Thoughts on Mendel, 45 St. Johns L.Rev. 86 (1970). The consequence was the New York court's overruling *Mendel v. Pittsburgh Plate Glass* by its decision in *Victorson v. Bock Laundry,* 37 N.Y.2d 395, 373 N.Y.S.2d 39, 335 N.E.2d 275 (1975). In the three cases consolidated for appeal in *Victorson* all the plaintiffs would have been barred by Section 2–725 if *Mendel* were followed; but, *Mendel* did not survive the first paragraph of the opinion. The New York Court of Appeals, in a thoughtful analysis of the problem, abandoned *Mendel* and held that the plaintiffs should have two years to bring their lawsuits following the occurrence of the accidents which caused their injuries. The court concluded its treatment of the problem by noting "the authorities are now in general agreement that [the] Statute of Limitations governing injuries to person or property are those properly applicable to strict products liability claims." *Id.* 373 N.Y. S.2d at 44, 335 N.E.2d at 279. We agree with the New York court and believe this is the only sensible accommodation between the two theories of liability, contract and tort, if legal symmetry is to be achieved. As Dean Murray has observed, the application of Section 2–725 to third party

9. Cf. *Irons v. Ford Motor Co.,* 21 U.C.C.Rptr. 556 (E.D.Pa.1977).

personal injuries has caused "enormous problems" and should be discarded, especially since the basis for applying Section 2–725 is more "formalistic" than substantial. Murray, Products Liability—Another Look, 35 U.Pitt.L.Rev. 255, 267 (1973).

█ Having determined that the two-year statute of limitations for personal injuries applies in the instant case, and that the statute of limitations began to run of the date of Mr. Salvador's injury, it is clear that he is barred from recovery under the Code for the same reason which barred his claim under 402A. The accident occurred in May of 1967, yet Mr. Salvador did not institute his lawsuit until March of 1971, almost four years later. That being the case, the order of the court below dismissing appellant's complaint must be affirmed, albeit for reasons different from those which persuaded that court. See generally, 3 Vale's Pa. Digest, Appeal & Error § 854(a) (1966).

For the foregoing reasons, the order of the court below is affirmed.

JACOBS, President Judge, concurs in the result.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.