467 A.2d 811

Gerald WILLIAMS, Daniel Banks and Linda Banks, his wife

v.

WEST PENN POWER COMPANY, a corporation, Reimann and Georger, Inc., a corporation, Commercial Services Company, a corporation, Slovenian Hall Association of Broughton, Pennsylvania and John J. Bahr, Alfred J. Bahr and Neil R. Bahr, individually and trading and doing business as Bahr Brothers,

v.

Jerry Lee MILBEE, individually and B & M Roofing Contractors, a partnership, and Daniel Banks.

Appeal of Gerald WILLIAMS, Daniel Banks and Linda Banks, his wife.

Gerald WILLIAMS, Daniel Banks and Linda Banks, his wife,

v.

WEST PENN POWER COMPANY, a corporation, Reimann and Georger, Inc., a corporation, Commercial Services Company, a corporation, Slovenian Hall Association of Broughton, Pennsylvania and John J. Bahr, Alfred J. Bahr and Neil R. Bahr, individually and trading and doing business as Bahr Brothers,

v.

Jerry Lee MILBEE, individually and B & M Roofing Contractors, a partnership, and Daniel Banks.

Appeal of REIMANN AND GEORGER, INC., a corporation.

Supreme Court of Pennsylvania.

Argued Sept. 14, 1983.

Decided Nov. 10, 1983.

558

Daniel B. Winters, Pittsburgh, for John J. Bahr, Alfred J. Bahr and Neil R. Bahr, etc.

David R. Johnson, John D. Rhodes, Pittsburgh, for Reimann & Georger, Inc.

Edward C. Milburn, Pittsburgh, for Jerry Lee Milbee, etc.

Robert Rade Stone, Pittsburgh, for Gerald Williams, Daniel Banks and Linda Banks.

W. Arch Irvin, Jr., Pittsburgh, for Slovenian Hall Ass'n.

George M. Weis, Pittsburgh, for West Penn Power Co.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION

NIX, Justice.

These appeals question whether the statute of limitations for tort actions, 42 Pa.C.S.A. § 5524(2),[1] or the Uniform Commercial Code ("Code"),[2] section 2–725 [3] is applicable in

1. Act of June 24, 1895, P.L. 236, § 2, as amended 12 P.S. § 34, was repealed and reenacted by the Act of July 9, 1976, P.L. 586, No. 142, § 2, effective June, 1978, 42 Pa.C.S.A. § 5524(2) § 5524. Two year limitation

The following actions and proceedings must be commenced within two years:

\* \* \* \* \* \*

(2) An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.

2. Act of April 6, 1953, P.L. 3, reenacted 1959, Oct. 2, P.L. 1023 § 1–101 et seq., 12A P.S. § 1–101 et seq.

3. § 2–725. Statute of Limitations in Contracts for Sale

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By

suits brought under the Code that allege personal injury. We are not here reexamining the general question of the substantive right of a third party to sue under the Code for breach of warranty. *Salvador v. Atlantic Steel Boiler Co.,* ("*Salvador I*") 457 Pa. 24, 319 A.2d 903 (1974) disposed of that issue.

What is being urged is that either based upon a concept of privity or a theory of the nature of the claim, the breach of warranty provisions under the Code should be controlled by the tort statute of limitations.

The Court of Common Pleas granted a motion for summary judgment based on the view that all of the claims were barred under the two-year tort statute of limitations. The Superior Court affirmed in part and reversed in part, ruling that the Banks' action against Commercial Services Company was governed by section 2–725 of the Code. *Williams v. West Penn Power Co.,* —— Pa.Super. ——, 460 A.2d 278 (1983).[4]

I.

Gerald Williams was an employee of B & M Roofing Contractors ("B & M"), a partnership, on May 19, 1975 when

the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

(3) Where an action commenced within the time limited by subsection (1) is so terminated as to leave available a remedy by another action for the same breach such other action may be commenced after the expiration of the time limited and within six months after the termination of the first action unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute.

**4.** The Superior Court panel consisted of Judges Rowley, Beck and Montemuro. Judge Beck filed a concurring and dissenting opinion.

a ladder platform hoist,[5] which he and his employer, Daniel Banks, were lowering, contacted a high tension electric power line. Both Mr. Williams and Mr. Banks suffered severe electrical burns throughout their bodies as a result of the ladder's conducting electricity from the high tension wires through them. Additionally, Mr. Williams lost two toes on his right foot and Mr. Banks' left leg was amputated below the knee.

Reimann and Georger, Inc. manufactured the ladder alleged to be defective in design and construction. It was purchased by B. & M., of which Mr. Banks was a partner, from Commercial Services Company, a seller and distributor of ladders, hoists and commercial equipment. The complaint does not allege the date of purchase of the ladder; however, the brief submitted to this Court by Reimann and Georger, Inc., indicates the injuries were inflicted "the same day the ladder was purchased".

On May 20, 1977, Mr. Williams and Mr. and Mrs. Banks filed a praecipe for writ of summons in trespass in the Court of Common Pleas of Allegheny County. On June 29, 1977 a complaint in trespass and assumpsit was also filed in that court. In responsive pleadings, the defendants by way of new matter asserted the two-year tort statute of limitations. On motion for summary judgment, all claims of the plaintiffs were dismissed on November 3, 1980. This result was justified by Judge Wekselman's interpretation of the holding of the Superior Court in *Salvador v. Atlantic Steel Boiler Co.* (*"Salvador II"*), 256 Pa.Super. 330, 389 A.2d 1148 (1978) affirmed per curiam, 492 Pa. 257, 258, 424 A.2d 497 (1981). He held the two-year tort statute of limitations applicable to all breach of warranty actions where the damages claimed are personal injury.

■ On appeal to the Superior Court, Judges Montemuro and Rowley, while maintaining the tort/contract dichotomy, did not interpret *Salvador II* as broadly as did Judge Wek-

---

**5.** A ladder platform hoist resembles a ladder; however, it has a motor which raises and lowers a platform on which materials may be carried.

selman. They resurrected an additional dichotomy of direct buyer/injured third party previously discredited by this Court in products liability cases. By this decision Mr. Williams, as an employee who did not purchase the ladder, was denied the benefit of section 2–725 of the Code. That court also held that Mr. Banks, under *Salvador II,* could not maintain an action against the manufacturer who placed the ladder in the stream of commerce although he could proceed against the retail seller. It was emphasized that distinctions were made for statute of limitation purposes and not for substantive ones. Judge Beck, in a concurring and dissenting opinion, emphasized the legally asymmetrical result reached by the majority and noted the present trends in the resolution of what appears to be a conflict between section 402A of the Restatement (Second) of Torts [6] and the Code [7]. For reasons that follow, we are of the view that the four-year statute of limitations provided in the Code is applicable to all breaches of warranty claims brought under the Code including those for personal injury.[8]

**6.** Section 402A of the Restatement (Second) of Torts was adopted in this jurisdiction in *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966). Section 402 A of the Restatement (Second) of Torts reads:

TOPIC 5. STRICT LIABILITY

§ 402 A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

**7.** Pennsylvania, in 1953, was the first state to adopt the Uniform Commercial Code.

**8.** § 2–715. Buyer's Incidental and Consequential Damages

(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation

## II.

At the outset it is clear that the actions in trespass brought by plaintiffs under § 402A of the Restatement (Second) of Torts are time-barred. Thus, we only address the question of the appropriate statute of limitations for that portion of the complaint entitled assumpsit which charges a breach of warranty attributed to Commercial Services Company, seller of the ladder, and Reimann and Georger, Inc., manufacturer of the ladder.[9]

An action for breach of warranty originally sounded in tort, being an action on the case for false warranty of an "undertaking" and fraud. It arose from the warrantor's consent to be bound. Later the element of consent was not required, but the "undertaking" and the existence of a warranty deemed the action to be one of contract.[10] As assumpsit became more exclusively a contract action, the requirement of an "undertaking" or agreement fathered the defense of lack of privity between the plaintiff and defend-

> and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.
>
> (2) Consequential damages resulting from the seller's breach include
>
> (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
>
> (b) injury to person or property proximately resulting from any breach of warranty.

**9.** There has been no challenge in this Court to the Superior Court's ruling as to West Penn Power Company, owner of the electrical powerlines, Slovenian Hall Association upon whose roof Mr. Williams and Mr. Banks were working when the injury occurred and Bahr Brothers, the contractors who subcontracted the roofing job to B & M. Therefore, the dismissal as to those defendants, affirmed by the Superior Court, stands.

**10.** *Stuart v. Wilkins,* 1 Doug. 18, 99 Eng.Rep. 15 (K.B.1778). *See,* 42 Harv.L.Rev. 414 (1929). Breach of warranty still retains its tort character. W. Prosser, *The Borderland of Tort and Contract* in Selected Topics On The Law of Torts 383 (1953).

ant.[11] By the time the Code was first adopted, it was clearly established through case law, *see, Loch v. Confair,* 361 Pa. 158, 63 A.2d 24 (1949), that actions for breach of warranty in sales contracts were limited to the immediate or original buyer in reliance upon the rule of privity of contract.

Although § 2–318 [12] of the Code extended the cause of action for breach of warranty to members of the buyer's family, his household or a guest in the purchaser's home, this Court continued the requirement of privity as to an employee of the purchaser of a product in *Hochgertel v. Canada Dry Corp.,* 409 Pa. 610, 187 A.2d 575 (1963) (horizontal privity).[13] Both horizontal privity, determinative of who may sue, and vertical privity, which decides who may be sued, have been considered undesirable.[14] The primary rea-

**11.** "Privity of Contract. That connection or relationship which exists between two or more contracting parties. It was traditionally essential to the maintenance of an action on any contract that there should subsist such privity between the plaintiff and defendant in respect of the matter sued on." Black's Law Dictionary 1079 (rev. 5th ed. 1979). "[When] there has been no direct transaction between the plaintiff and the defendant, [it] is usually expressed by saying that they are not in "privity" of contract." William L. Prosser, Law of Torts 622 (4th ed. 1971).

**12.** Section 2–318 reads:

§ 2–318. Third Party Beneficiaries of Warranties Express or Implied

A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

**13.** That decision was subsequently overruled in *Salvador v. Atlantic Steel Boiler Co. ("Salvador I"),* 457 Pa. 24, 319 A.2d 903 (1974).

**14.** See, Jaeger, Privity of Warranty: Has the Tocsin Sounded?, 1 Duquesne U.L.Rev. 1 (1963); Jaeger, How Strict is the Manufacturer's Liability? Recent Developments, 48 Marq.L.Rev. 293 (1965); Jaeger, Product Liability: The Constructive Warranty, 39 Notre Dame Law. 501 (1964); Jaeger, Warranties of Merchantability and Fitness for Use: Recent Developments, 16 Rutgers L.Rev. 493 (1962); Keeton, Products Liability—Liability Without Fault and the Requirement of a Defect, 41 Texas L.Rev. 855 (1963); Lascher, Strict Liability in Tort for Defective Products: The Road To and Past Vandermark, 38 So.Cal.L.Rev. 30 (1965); Noel, Products Lia-

sons offered for the condemnation of the privity require-
ment centered upon the unfairness of insulating the remote
manufacturer, who in fact made the defective product, and
barring a non-buyer consumer who is in fact injured by that
defect under present marketing practices.

The decision in *Henningsen v. Bloomfield Motors, Inc.*, 32
N.J. 358, 161 A.2d 69 (1960), is considered the fall of privity
in products liability cases. In that case an automobile made
by Chrysler was sold to a dealer in Bloomfield. The dealer
sold the automobile to Henningsen whose wife was injured
when "something went wrong" with the steering gear. Mrs.
Henningsen filed suit against Bloomfield Motors and Chrys-
ler. The court held both defendants liable without a show-
ing of negligence and without privity of contract. The court
ruled that:

Accordingly, we hold that under modern marketing condi-
tions, when a manufacturer puts a new automobile in the
stream of trade and promotes its purchase by the public,
an implied warranty that it is reasonably suitable for use
as such accompanies it into the hands of the ultimate
purchaser. Absence of agency between the manufacturer
and the dealer who makes the ultimate sale is immaterial.
32 N.J. at 384, 161 A.2d at 84.[15]

Thus, after this Court adopted section 402A of the Re-
statement (Second) of Torts in 1966, it logically followed
that the fall of privity in products warranty would occur in

bility of Retailers and Manufacturers in Tennessee, 32 Tenn.L.Rev.
207 (1965): Prosser, the Fall of the Citadel, 50 Minn.L.Rev. 791
(1966); Prosser, the Assault upon the Citadel (Strict Liability to the
Consumer), 69 Yale L.J. 1099 (1960); Speidel, The Virginia "Anti-
Privity" Statute: Strict Products Liability under the Uniform Com-
mercial Code, 51 Va.L.Rev. 804 (1965); Traynor, The Ways and
Meanings of Defective Products and Strict Liability, 32 Tenn.L.Rev.
363 (1965); Wade, Strict Tort Liability of Manufacturers. 19
Sw.L.J. 5 (1965). Note, Strict Products Liability and the Bystand-
er, 64 Colum.L.Rev. 916 (1964).

15. The next year, (1961), § 402 A of the Restatement (Second) of
Torts was initially drafted and adopted covering food for human
consumption. After a second adopted draft included products for
intimate bodily use in 1962, the present § 402A covering any product
was drafted and adopted in 1964.

Pennsylvania. In *Kassab v. Central Soya,* 432 Pa. 217, 246 A.2d 848 (1968) it was held that a purchaser of a product may maintain an action in assumpsit against a remote manufacturer for injury to commercial breed cattle caused by a breach of an implied warranty in the cattle feed. *Kassab* abolished vertical privity in assumpsit cases brought under the Code and indicated the Code should be construed as co-extensive with section 402A.[16] Chief Justice Roberts, then Mr. Justice Roberts, forcefully stated:

> Vertical privity can no longer commend itself to this Court.
>
> To retain this tort-contract dichotomy with its haphazard, crazy quilt of exceptions and appendages can only cause Justice VOELKER'S language (speaking for the Supreme Court of Michigan when that tribunal abolished the privity requirement) to ring painfully true for the law of *this* Commonwealth. In commenting on the state of Michigan law under privity it was said: "A court lacking a clear and understandable rule of its own can scarcely be expected to impart it to others. Legal confusion has inevitably resulted. Aggrieved plaintiffs have scarcely known whether to sue in deceit or fraud or for negligence or breach of warranty-or indeed whether it was worthwhile to sue at all." *Spence v. Three Rivers Builders & Masonry Supply, Inc.,* 353 Mich. 120, 129, 90 N.W.2d 873, 878 (1958). We therefore hold that the lack of privity between appellants and Soya cannot insulate the latter from liability for breach of warranty. (Emphasis in original)

432 Pa. at 234–235, 246 A.2d at 856.

However, after *Kassab,* horizontal privity remained the law of this Commonwealth until the Superior Court, in *Salvador v. Atlantic Steel Boiler Co.,* 224 Pa.Super. 377, 307 A.2d 398 (1973) foreshadowed this Court's decision in *Salvador I.* The Superior Court held the plaintiff-employee who sustained serious personal injuries when a steam boiler pur-

**16.** While the causes of action under section 402A and the Code are co-extensive, they are not identical.

chased from the defendant by plaintiff's employer exploded was entitled to maintain his action in assumpsit for breach of implied warranty. Mr. Salvador had sued in trespass and assumpsit. The Superior Court's reasoning was that since *Kassab* had abolished vertical privity, it would be inconsistent and without any basis to disallow recovery for the lack of horizontal privity. Quoting from Dean Prosser in "Strict Liability to the Consumer", 69 Yale Law Journal 1099 (1960) the court approved the fact that "[i]f warranty is a matter of tort as well as contract, and if it can arise without any intent to make it a matter of contract, then it should need no contract; and it may arise and exist between parties who have not dealt with one another." 224 Pa.Super. at 386, 307 A.2d at 403.

In *Salvador I* we overruled *Hochgertel* and affirmed the Superior Court, using this language:

Today, as the Superior Court correctly recognized, a manufacturer by virtue of section 402A is effectively the guarantor of his products' safety. See *Webb v. Zern* [422 Pa. 424, 220 A.2d 853] supra; *Kassab v. Central Soya*, supra. Our courts have determined that a manufacturer by marketing and advertising his product impliedly represents that it is safe for its intended use. We have decided that no current societal interest is served by permitting the manufacturer to place a defective article in the stream of commerce and then to avoid responsibility for damages caused by the defect. He may not preclude an injured plaintiff's recovery by forcing him to prove negligence in the manufacturing process. *Webb v. Zern.* Neither may the manufacturer defeat the claim by arguing that the purchaser has no contractual relation to him. *Kassab v. Central Soya.* Why then should the mere fact that the injured party is not himself the purchaser deny recovery?

Because the manufacturer is now a guarantor, the "harsh and unjust result" is worked on the plaintiff who may recover for his injury or loss if his complaint is in trespass, but on identical facts would be denied relief if the pleading is captioned "Complaint in Assumpsit." See

*Kassab,* supra, 432 Pa. at 229, 246 A.2d at 853. This anomalous situation is certainly to be avoided. Thus "[w]ith Pennsylvania's adoption of Restatement 402a, the same demands of legal symmetry which once supported privity now destroy it." Id. (Footnotes omitted)
457 Pa. at 32–33, 319 A.2d at 907–908.

Thus following the lead of the drafters of the Code who eliminated the privity requirement for members of the buyer's household, the case law of this jurisdiction completed the process by abolishing privity in this area.

However, Pennsylvania was not to enjoy a respite after the successful siege on the citadel of privity. The confusion resulting from the tort/contract dichotomy was resurrected and exacerbated by the dispute as to the appropriate statute of limitations to be applied in actions under the Code for breach of warranty for recovery for personal injury. Also, efforts to resolve this conflict began to resuscitate the ghost of privity.

After the claim in *Salvador I* was remanded for further proceedings in the lower court, summary judgment for the defendants was granted on the ground of a time-bar. The section 402A tort claim of Mr. Salvador was clearly out of time since the injury occurred in May, 1967 and suit was not filed until March, 1971 some three years and ten months later. As to the Code claim, defendants argued it should have been filed in 1968, four years from the date of the sale of the boiler to the plaintiff's employer. Counsel for plaintiff Salvador argued the Code statute of limitations should not be applied literally but should run from the date of the injury. On appeal, the Superior Court, in an effort to maintain symmetry with Section 402A created the converse by applying the two-year tort limitation to Mr. Salvador's claim. They ruled that third-party consumers should be limited to the two-year statute of limitations for their breach of warranty claim under the Code. The asymmetry results from the disparity in the treatment between a direct purchaser and all other consumers, even though the plain-

tiffs were hurt in the same accident and sustained equally grievous injuries.

## III.

■ The Superior Court in *Salvador II* strayed into error by embracing a tort/contract dichotomy.[17] The inherent fallacy of such a dichotomy is that in the area of products liability we enter the borderland of tort and contract. It is not a question of whether a claim sounds in tort or assumpsit. Rather it sounds in both. Therefore, there is no legitimacy in attempting to use such a dichotomy as the predicate for distinction as to the limitation to be given the action. See *Kassab v. Central Soya, supra.*

Some jurisdictions have attempted legislatively to remedy the problem in this area by specifically drafting statutes of limitation in the field of products liability.[18] Here we are faced with the question of whether to apply the Code statute of limitations. For the reasons stated, the mere fact the breach of warranty claim seeks recovery for personal injuries does not justify deviating from the Code's prescribed limitations.

■ So too there is also no justification in restoring the concept of privity. The extension of liability under the Code

**17.** In its opinion, that court stated:
   Since virtually all jurists and scholarly commentators recognize that this strict liability recovery in a contractual context is purely a fiction created to reach a desirable social policy, the theory of recovery sounds in tort. See, e.g. *Hochgertel v. Canada Dry Corp.,* 409 Pa. at 610, 187 A.2d 575; J. White and R. Summers, Uniform Commercial Code 339–40 (1972); Murray, Products Liability—Another Word, 35 U.Pitt.L.Rev. 255, 267 (1973); Note, 36 U.Pitt.L. Rev. 477, 483 (1974).
   \*    \*    \*    \*    \*    \*
   If the theory sounds in tort rather than contract, it follows that the appropriate statute of limitations should be that which would be applied if the plaintiff's complaint were captioned "Trespass." 256 Pa.Super. at 341, 389 A.2d at 1154.

**18.** At least sixteen states have enacted products liability statutes of limitation: Alabama, Arizona, Arkansas, Colorado, Connecticut, Florida, Idaho, Illinois, Indiana, Iowa, Michigan, Minnesota, Nebraska, New Hampshire, Oregon, and Tennessee.

to persons not in privity with those in the chain of manufacture and marketing does not validate the application of the tort statute of limitations. The Code itself did not limit its breach of warranty claims to direct purchasers. Comment three to section 2–318 regarding *Third Party Beneficiaries of Warranties Express or Implied* clearly states:

> The first alternative expressly includes as beneficiaries within its provisions the family, household, and guests of the purchaser. Beyond this, the section in this form is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to this buyer who resells, extend to other persons in the distributive chain.

In view of our impressive case law criticizing the use of privity, *Kassab v. Central Soya, supra,* and *Salvador I, supra,* and the lack of symmetry that will result in this area if we were to follow the dictates of *Salvador II,* such a course of action would clearly be a disservice to our jurisprudence. Neither is it warranted since it is not mandated by the Code nor required by our precedent. We therefore now express our disapproval of the holding in *Salvador II.* We rule today that section 2–725 of the Code applies to all breach of warranty actions brought under the Code and that no exception will be made merely because the claim seeks to recover for personal injury. Thus all claimants receiving injury in the manner of Mr. Williams and Mr. Banks have the option of proceeding in tort, governed by the tort statute of limitations, or under the Code, governed by the Code statute of limitations.

## IV.

Accordingly, the Order of the Superior Court sustaining the motions of Commercial Services Company and Reimann and Georger, Inc., for summary judgment against Mr. Williams is reversed. The Order of the Superior Court sustaining the motion of Reimann and Georger, Inc., for summary judgment against the Banks is reversed. The Order of the Superior Court reversing the court of common pleas' grant

of the motion of Commercial Services Company for summary judgment against the Banks is affirmed. The matter is remanded to the court of common pleas for further proceedings consistent herewith.

LARSEN, J., concurs in the result.