Reynolds Disposal Company, Petitioner v. Pennsylvania Public Utility Commission, Respondent.

DeWayne E. Shreffler et al., Petitioners v. Pennsylvania Public Utility Commission, Respondent.

Argued October 4, 1983, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, DOYLE and Barry.

*Cyril T. Garvey,* for petitioner, Reynolds Disposal Company.

*William G. McConnell, Cusick, Madden, Joyce and McKay,* for petitioners, DeWayne E. Shreffler et al.

*Robert P. Meehan,* Assistant Counsel, with him *Louise R. Knight,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

OPINION BY JUDGE DOYLE, December 23, 1983:

This case arises from two separate appeals taken from an order of the Pennsylvania Public Utility Commission (PUC) which directed that the Reynolds Disposal Company (Reynolds) correct inadequacies in its sewage system.

Reynolds owns and operates a sewer system which services a residential area in Pymatuning Township, Mercer County. Although the sewer system performs adequately under normal conditions, the system overloads during wet weather, causing sewage to back up into the basements of a number of residences. Several

homeowners[1] experiencing such sewage backups brought a trespass action against Reynolds in the Mercer County Court of Common Pleas, alleging that Reynolds was negligent in allowing the backups to occur. Reynolds responded by joining additional homeowners alleging that the backups were caused by improper connections of french drains into the sewer system at their residences.

On April 29, 1981 this action was stayed by an order of the court of common pleas pending a determination by the PUC as to whether Reynolds was in violation of its requirement to provide adequate service.[2] Subsequently, the homeowners[3] filed a complaint with the PUC, and after extensive testimony had been taken, an administrative law judge issued an initial decision containing findings of fact and conclusions of law. On July 27, 1982 the PUC adopted the judge's initial decision and his ruling on exceptions, and entered an order requiring Reynolds to prepare and implement a plan to eliminate surface water infiltration of its sewer system. Both Reynolds and the homeowners have appealed from the decision of the PUC, and their appeals have been consolidated by order of this Court dated October 21, 1982.

---

[1] Six couples filed separate actions which were consolidated by the court of common pleas. The plaintiffs in the consolidated action are: DeWayne and Pamela Shreffler, Gerald and Dolores Plowman, Thomas and Bessie Mowry, William and Karen Riggle, Dale and Patricia Johnson, and Arthur and Doris Harvey. (Hereinafter referred to as the homeowners).

[2] Section 1501 of the Public Utility Code, 66 Pa. C. S. §1501. When a utility's failure to maintain reasonable and adequate service is alleged, the PUC must make an initial determination on this issue before the court of common pleas can proceed to the issues of liability and damages. *Bell Telephone Co. of Pennsylvania v. Sanner*, 248 Pa. Superior Ct. 273, 375 A.2d 93 (1977).

[3] The complainants before the PUC included all those homeowners in the Mercer County action with the addition of Roderick and Jenny Daugherty.

## Homeowners Appeal

In their petition for review, the homeowners contend that the PUC erred in not including in its conclusions of law the finding that Reynolds had failed to provide reasonable service and was in violation of its tariffs. Section 703(e) of the Public Utility Code[4] requires that the decisions of the PUC include findings which are of sufficient detail to enable the court on appeal to determine the controverted question presented by the proceeding, and whether proper weight was given to the evidence.

The findings in this case are more than adequate in this respect. The initial decision of the administrative law judge contains 132 findings of fact and eight conclusions of law. Among the conclusions of law were the findings that Reynolds is under an ongoing duty to inspect sewer connections, and had an affirmative obligation to correct any conditions which were in violation of regulations. Although the judge made no specific conclusion of law stating that Reynolds violated this duty, such a conclusion may be readily inferred from the findings of fact, which indicate that Reynolds had, on numerous occasions, failed to inspect or correct faulty sewer connections.[5] It is clear that the PUC implicitly made this conclusion when it framed its order requiring Reynolds to correct im-

---

[4] 66 Pa. C. S. §703(e).

[5] Facts established that it was a violation of regulations to allow french drains to be connected into the sewer system. Reynolds had checked 80 residences and found 66 to have improper connections, but has not checked 420 other residences, many of which would also likely have improper connections. In addition, on at least one occasion, Reynolds' inspector allowed a french drain to be installed without inspecting its connection or requiring a dry-well to be dug. On another occasion, Reynolds' inspector allowed a customer's sewer lateral to be installed at too shallow a slope, and with a "hump," in violation of regulations.

proper conditions in its system.[6] The lack of a specific conclusion of law that there has been a violation is of no moment when, as here, the decision read in its entirety can lead to no other conclusion.[7]

The PUC made findings which were sufficient and supported by the evidence. The PUC is under no additional obligation to make every possible conclusion of law which might be drawn from the facts.[8] Their failure to do so was not error.

## The Appeal of Reynolds

In its petition, Reynolds contends that the PUC erred in its interpretation of Reynolds' Tariff Rule No. 6 which states:

### LEAKS, STOPPAGES AND/OR DEFECTIVE PLUMBING

The Company shall not be liable for any damage or expense resulting from leaks, stoppages, or defective plumbing or from any other cause occurring to any premises or within any house or building; and it is expressly stipulated by and between the Company and the Customer that no claims shall be made against the said

[6] Under Section 1505 of the Public Utility Code, 66 Pa. C. S. §1505, the Commission will order a utility to correct conditions "[w]henever the commission . . . finds that the service or facilities of any public utility are unreasonable, unsafe, inadequate, insufficient, or unreasonably discriminatory, or otherwise in violation of this part. . . ."

[7] We note that the PUC stated that it did not wish its decision to be construed as a blanket finding of inadequacy of service. A conclusion of law addressing this point would have been so construed unless it had specifically referred to each instance in which a violation had been found. Such a procedure would be cumbersome and is not necessary to facilitate appellate review.

[8] For this reason, we also reject the homeowners' contention that specific conclusions of law should have been made concerning the interpretation of Reynolds' Tariff Rule No. 6, found in the discussion of the initial decision.

> Company on account of the breaking, stoppage
> or any damage or expense to any service lines
> on said property, when the cause thereof is
> found to be in that part of the service line lying
> on said property.

The administrative law judge interpreted this rule to say "nothing more than Reynolds accepts no responsibility for defects or conditions existing on the customer's property which result in harm to the customer." Reynolds, on the other hand, contends that the literal meaning of the rule confers upon it immunity from liability for any sewer-related damage to any building or premises.

In evaluating the tariffs filed with it, the PUC may determine their reasonableness, fairness, and consistency with established policy. *Behrend v. Bell Telephone Co.,* 242 Pa. Superior Ct. 47, 363 A.2d 1152 (1976), *vacated and remanded on other grounds,* 473 Pa. 320, 374 A.2d 536 (1977). Reynolds contends that the PUC erred by rejecting the literal meaning of Rule No. 6 as unreasonable and substituting its own interpretation, in light of the *Behrend* decision which held that a rule limiting liability of a public utility is not unreasonable. *Behrend; see also, opinion on remand,* 257 Pa. Superior Ct. 35, 390 A.2d 233 (1978) (holding such rule also to be constitutional). We need not decide whether the interpretation of the rule advanced by *Reynolds* is reasonable under the *Behrend* decision, for we find that the PUC's interpretation does not offend the literal meaning of the rule. This is simply not a case in which the PUC has rejected the plain meaning of a rule as being unreasonable.[9] Rather, the rule in question contained ambiguous language which con-

---

[9] Nowhere in the decision adopted by the PUC is Rule No. 6 declared unreasonable. Instead, the Rule, as interpreted, was specifically found to be "reasonable and proper under the law of Pennsylvania."

veyed no clear, literal meaning; the rule was suscep-
tible of a number of interpretations.[10] In light of this
ambiguity, we find that the PUC interpreted the rule
in a most reasonable fashion. The second portion of
Rule No. 6 contains language which limits the utility's
liability for damages when the damage to the service
lines occurs on the customer's property. This portion
of the rule would have no meaning if the rule as a
whole were interpreted, as Reynolds suggests, to limit
the utility's liability for damages regardless of the
location of the damage. The PUC's interpretation
gives meaning to all provisions of the rule, and is
therefore more reasonable than the interpretation ad-
vanced by Reynolds. *See Cerceo v. De Marco,* 391 Pa.
157, 137 A.2d 296 (1958).

Reynolds also contends that the PUC erred by
placing the burden upon Reynolds to show the reason-
ableness of the rule in question. This contention again
assumes that Reynolds' interpretation of the rule rep-
resents its plain meaning which has been, in turn, re-
jected by the PUC as being unreasonable. Instead, we
have found that the rule conveyed no plain meaning.

For these reasons, we find that the PUC committed
no error, and accordingly affirm their decision with
respect to both Petitions.

### Order

Now, December 23, 1983, the Order of the Pennsyl-
vania Public Utility Commission in the above refer-
enced matter, dated July 27, 1982, is hereby affirmed.

---

[10] In his Ruling on Exceptions, the administrative law judge
stated:

The language in Behrend cannot be stretched into approving
an *interpretation* of Reynolds' Rule No. 6 that would ex-
clude Reynolds from *all* liability. I did not so interpret Rule
No. 6, as is set forth in the Initial Decision at pp. 23-24.

A fair reading of Rule No. 6 does not convey the clear
and unambiguous message sought to be found in it by
Reynolds. (Emphasis in original.)