## Bellotti v. Duquesne Light Company

*Howard K. Hilner,* for plaintiffs.
*John A. Lee,* for defendants.

WETTICK, *A.J.* April 16, 1987 — Plaintiffs sued Duquesne Light Company for property damage caused by a "power surge" entering plaintiffs' residence on July 2, 1983. The suit was brought more than three years after the damage to plaintiffs' property. Duquesne Light has filed a motion for judgment on the pleadings in which it contends that any theory upon which plaintiffs may recover is barred by the statute of limitations.

Plaintiffs concede that any tort action is barred by the statute of limitations.[1] They seek to recover un-

---

1. A negligence action is governed by the two-year limitation period of 42 Pa.C.S. 5525(4) which applies to any tortious act causing damage to real property. *Crisante v. J. H. Beers*

der a breach of warranty theory.[2] They contend that Duquesne Light breached the implied warranties of merchantability (13 Pa.C.S. §2314) and of fitness for a particular purpose (13 Pa.C.S. §2315) of the Uniform Commercial Code.

The Uniform Commercial Code applies only to transactions involving the sale of goods. Duquesne Light contends that the furnishing of electricity does not constitute the sale of goods but, instead, the delivery of services. Thus, the warranty provisions of the Uniform Commercial Code do not apply to this transaction.

The case law does not support this contention. In *Schriner v. Pennsylvania Power and Light Co.*, 348 Pa. Super. 177, 501 A.2d 1128 (1985), the Superior Court considered whether the doctrine of strict liability may be applied against a utility company in a lawsuit alleging injury to dairy cattle as a result of "stray voltage" from milking equipment electrified by the power company. The strict liability doctrine as set forth in section 402A of the Restatement (Second) of Torts applies only to the sale of a "product." The court held that the transmission of electricity is a service rendered by the utility company to prospective customers — and not a product — while still in the distribution system but the electricity becomes a product within the meaning of section

---

*Inc.*, 297 Pa. Super. 337, 443 A.2d 1150 (1982). An action under section 402A of the Restatement (Second) of Torts is also governed by the two-year limitation period of 42 Pa.C.S. 5524. *Williams v. West Penn Power Co.*, 502 Pa. 557, 467 A.2d 811, 814 (1983); *Salvadore v. Atlantic Steel Boiler Co.*, 256 Pa. Super. 330, 389 A.2d 1148, 1150 (1978), overruled on other grounds at 467 A.2d 811.

2. A breach of warranty action based on the Uniform Commercial Code has a four-year limitation period. *Williams v. West Penn Power Co.*, supra.

402A once it passes through the customer's meter. In this case, the alleged damage occurred as a result of electricity entering plaintiffs' residence. We assume that the rationale which supported the *Schriner* holding would also govern the issue of when electricity is a "good" within the meaning of article 2 of the Uniform Commercial Code. Consequently, this transaction comes within the scope of the Uniform Commercial Code.

Also see *Wivagg, v. Duquesne Light Co.,* 123 P.L.J. 385, 73 D.&C.2d 694 (1985), which upheld a jury verdict awarding damages against Duquesne Light for economic loss and property damage resulting from Duquesne Light's breach of the implied warranties of merchantability and fitness guaranteeing the provision of safe and hazard-free electric service; and *University of Pittsburgh v. Equitable Gas Co.,* 5 D.&C.3d 303 (1978), which permitted plaintiff to bring a breach of warranty action against a gas company. See also, *Rush v. U.G.I. Corp.,* 12 D.&C.3d 302 (1978).

Duquesne Light next argues that there can be no recovery based on an allegation of the implied warranties of merchantability and fitness for a particular purpose because it has excluded these warranties. Section 2316 of the Uniform Commercial Code permits a seller to exclude the implied warranties of merchantability and fitness for a particular purpose. Duquesne Light argues that it has excluded these implied warranties through a tariff which Duquesne Light filed with the Public Utility Commission on April 29, 1983, effective June 28, 1983. Rule 19 of this tariff provides:

"The company will use all reasonable care to provide safe and continuous service but shall not be liable for any damages arising through interruption of the service or for injury to persons or property resulting from the use of the service."

In order for a seller to exclude the implied warranties of merchantability and fitness for a particular purpose, subsection 2316(c) of the Uniform Commercial Code requires "language which in common understanding calls to the attention of the buyer who makes a claim that there is no implied warranty." Rule 19 does not clearly provide that Duquesne Light offers no warranties. To the contrary, this rule contains a statement that the company "will use all reasonable care to provide safe and continuous service."

Duquesne Light relies on the provision within rule 19 which states that the company "shall not be liable for any damages arising through interruption of the service or for injury to persons or property resulting from the use of the service." However, this provision would appear to exonerate Duquesne Light from liability only where the damages arising through disruption of the service or the injury to persons or property resulting from the use of the service was not caused by Duquesne Light's breach of its promise to use all reasonable care to provide safe and continuous service. Any other reading of rule 19 would give no meaning to the provisions of the rule in which Duquesne Light agrees to use reasonable care to provide safe and continuous service. Also, a reading of rule 19 which conferred immunity for damages or injury caused by Duquesne Light's failure to use reasonable care creates an apparent conflict between rule 19 and the requirements of the Public Utility Code (66 Pa.C.S. §1501) that:

"Every public utility shall furnish and maintain, adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, con-

venience, and safety of its patrons, employees and the public. *Such service also shall be reasonably continuous and without unreasonable interruptions or delay.* Such service and facilities shall be in conformity with the regulations and orders of the commission. Subject to the provisions of this part and the regulations or orders of the commission, every public utility may have reasonable rules and regulations governing the conditions under which it shall be required to render service. . . ." (emphasis added). See generally, *Reynolds Disposal Company v. Pennsylvania Public Utility Commission,* 79 Pa. Commw. 222, 468 A.2d 1179 (1983).

Furthermore, if rule 19 is construed to exonerate Duquesne Light from all liability for damages or injuries resulting from its failure to exercise reasonable care, rule 19 is not enforceable. The provisions of rule 19 upon which Duquesne Light relies are not an exclusion or modification of any implied warranties but, rather, a total elimination of remedies for breach of warranty.

Subsection 2316(d) permits remedies for breach of warranty to be limited in accordance with sections 2718 and 2719. But, these sections of the Uniform Commercial Code do not permit the seller to exclude all remedies. See Uniform Commercial Code Comment 1 to section 2719:

"However, it is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this article they must accept the legal consequences that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract. Thus any clause purporting to modify or limit the remedial provisions of this article in an unconscionable manner is subject to deletion and in that event the remedies made

available by this article are applicable as if the stricken clause had never existed."

Finally, there is no merit to any argument that rule 19 supercedes the provisions of the Uniform Commercial Code. This court recognizes that in *Behrend v. Bell Telephone Company*, 242 Pa. Super. 47, 363 A.2d 1152 (1976), the Superior Court held that a tariff which *limited* the telephone company's liability for acts of ordinary negligence was binding on the customer. But rule 19 is an exculpatory clause. For the reasons set forth in the concurring opinion of then President Judge Spaeth in *DeFrancesco v. Western Pennsylvania Water Company*, 329 Pa. Super. 508, 478 A.2d 1295, 1305-1307 (1984), we hold that a tariff of a public utility which provides no remedies to the customer for breach of its obligations is void as against public policy.

For these reasons, we enter the following

ORDER

On this April 16, 1987, it is hereby ordered that defendant's motion for judgment on the pleadings is denied.